All right, our next case for this morning is Accident Fund Insurance Company of America against Custom Mechanical Construction and some other parties, 212548, etc. So we will begin with you, Ms. Rowe. Thank you, Your Honor, and may it please the Court. We would ask that this Court reverse the summary judgment that was granted to Africa in this case because genuine issues of material fact exist, most specifically regarding notice. In Indiana, notice to once an insurance policy is procured and a non-captive agent like Schultheis becomes the agent for the insurance carrier. Before that time, they're the agent for the insured. And in this case, there are multiple factual disputes about when and what was told to Schultheis and its agent, Sublett, about CMC's work in Kentucky and when that was done. I mean, it dates back far before what's relevant to this case. But this is a fraught area, I have to say, because there's Indiana law about when you are the agent of the insured and when you become the agent of the insurance company, the insurer. But it does seem pretty clear, a couple of things. First of all, that there are two different relevant notice provisions in this policy, neither of which was invoked to give effective notice to the accident fund company, which I may call them, so as not to call them Africa. And your opponents have quite a few citations in their brief to the effect that these notice requirements are considered to be material to the policy, essential. So it seems that Custom was doing work in Kentucky at the time the policy was reissued for the new owners. And it also seems they begin new work in Kentucky. And this is highly material. Kentucky, each state has its own workers' compensation laws. The amounts are different. The premiums might vary. Sometimes you might even not need an end, you might be okay, doesn't mean that there isn't a notice requirement. And that's what bothers me about this case. Let me take some of that. First, let me say this. One thing about this policy, it's a short six-page policy. One thing about it that's interesting to me is in Part 3, in the Part 3 coverage, which is relevant to this case, and it has the two notice provisions as this court discussed, it doesn't define how notice has to be given. If you look later in the policy, when it's talking about cancellation, and in that policy, it's in the required short appendix on 48. If you look at that policy provision, it specifies, it must be written notice to accident fund if you're going to cancel a policy. Backing up to Part 3, it doesn't say that. So presumably oral notice is enough. But isn't the issue here there was just no notice at all? Well, that's part of the issue and why I started out with the fact that CMC says they gave notice. They say they gave notice to Shultice. Now Shultice disputes that. There's a factual dispute on that. The issue is if notice was given to Shultice, was it given to accident fund because Shultice is the agent for accident fund. So it's automatic. Once notice is given, whether it's oral, whether they call them and say, hey, I've got this job in Henderson, whether they call and say, I need a certificate of insurance for a job I just got in Henderson, Kentucky, can you do that? And Shultice gets that information. If Shultice is accident fund's agent, then that means accident fund got notice. And there's nothing in the policy saying, now again, Shultice disputes it. That seems like a real stretch to me, actually, given these relationships as they've existed and actually even given sublets behavior in filling out these application forms and ticking off that there's no work outside of Indiana. I mean, what's that all about? I don't know how that got in there, Your Honor. What I will say is this. All of the Kentucky work that keeps being discussed at the district court focused on, most of that is completely irrelevant to this case because it predates the policy. And the policy is only talking about what happened on May 13th of 2016 and then, of course, the Pilgrim's Pride project. But I'm not sure. I'm not going to go quite that far with you because when the change in ownership happens, the accident fund people decide we need to reissue the policy, which is a pretty routine sort of thing, actually, in insurance. You don't just sort of roll in policies over when there's a material change of control. So new stuff is filled out by sublet working for Shultice. And it's not accurate, actually. And there is work going on that very day in Kentucky. Now, whether it was work that triggered workers' comp benefits or whether it wasn't work that triggered workers' comp benefits, I'm not sure is on the day of that predated May 13th or whatever the date was policy. Yeah, it's May 13th. And I just don't see how they complied with this. And furthermore, it seems to me material because if they're working on this Pilgrim's Pride project, for which we all agree they've hired some people from the Kentucky hiring hall, there's the, quote, other states' coverage in the policy. And you're trying to tell accident fund that without knowing anything about the Kentucky work, they've suddenly written a policy that covers workers' comp insurance under the law of Kentucky. I'll answer that. First, I'll say all that prior work would be material if accident fund had rescinded its policy. Because that is the proper remedy for when you say, hey, insured, you submitted improper, false information on an application. We relied on that application. We gave you a policy. And all that application information was incorrect or some of it was incorrect. And we're rescinding the policy. Material parts of it, yeah. In this case, they never rescinded the policy. They, to this day, have not tried to rescind the policy. The only thing they've done, that's why I don't believe it's relevant, the only thing they've done in this case is declined coverage because they're saying we didn't get notice under Part 3A.4, the two notice provisions. I'll get there in a second. Why would they have to rescind the policy, though? It's a six-month policy. They weren't given notice. They declined coverage. Seems to me a much more straightforward and reasonable way of addressing the situation than rescinding a six-month policy that was at its very end when the coverage situation popped up. I mean, we're talking about month five into a six-month policy. But I think the effect is the same. If you're saying that there's false application, I don't think it matters when you rescind. You're rescinding it and it kind of goes back and says, it's almost as if that policy never existed. That's the proper remedy under Indian law if there's false statements made in an application. They could have done that here. Accident Fund could have tried that. They did not try that. But that's not their, that would not have been their only remedy. The other remedy is deny coverage for something we had no notice of. Right. And then that's what they, they deny coverage based on a very specific provision. I mean, you know, when insurance companies deny coverage, they have to tell the insured what they're denying coverage for. They can't just tell you one reason and then argue in court a completely different reason. And they say it's because under Part 4, under Part 3A4, you didn't give a, you had work on the day in question, that the effective date, and you didn't give us notice within 30 days. Within 30 days, right. It was right there. Now, this court said that, that it's irrelevant or you question whether it's relevant that the work that they had, that CMC had on May 13th, it was a two-day project, they were finishing up that day, whether that matters that they didn't need the Part 3 coverage for that. But what, but isn't that what the plain language of the policy says? If you have work on the effective date of this policy, it doesn't say if you have a job that's going to last for six months or anything like that. Work on the effective date of this policy. You've just agreed they did have work in Kentucky on the effective date of the policy. So no coverage for Kentucky unless we are notified within 30 days. And they don't notify. Quickly, I'll say two things to that because I see I'm running out of my time. First, the policy, like any other insurance contract or any contract for that matter, has to be read as a whole to harmonize its provisions. And when you read Part 3, the first thing you come to is Part A2, which qualifies that the work they're talking about is work for which you would need. You're not insured or you're, you know, so you would need that Part 3 coverage. Then you go to 4 and it says if you have work. It doesn't repeat that qualification that it just said, but it does say coverage will not be afforded to that state. Again, it's implying that you need coverage for that state. I think, I believe it would be unconscionable and definitely an absurd result to say that an insured, especially when Indiana always favors the insured, when an insured can lose coverage for an entire state solely because they didn't advise accident fund of a job that they didn't even need coverage for at that time. All right. Thank you very much. Ms. Hoffman. May it please the court, Jean Hoffman on behalf of Appley Accident Fund Insurance Company of America. I would, I think the court has already zeroed in on what we think the main problem and issue is here, that there was no notice. There was no indication in the insurance that any work was being done outside the state of Indiana and they didn't apply for coverage in Indiana when they submitted the, or I'm sorry, in Kentucky when they submitted the application, which takes us to the potential coverage for a worker in Kentucky. So yeah, explain to me what you think this other state's language in the policy is doing other than just decorating the policy. Well, it does give the insured the opportunity to obtain the coverage for other states, any other state, Kentucky being one of them, if they provide the carrier with the notice that is required for them to obtain that coverage. So certainly the reason it's there is it's an opportunity for the insured to obtain that coverage, but they have to comply with the policy requirements, including and mainly the notice, which is not just a surplus language there. Notice is a condition of the policy and of the coverage. It looks like that in sub paragraph A4, but the B notice just says, tell us at once if you begin work in any state listed in item 3C of the information page. It doesn't say anything about what's going to happen, whether we're just going to charge you more at the end of the anniversary year, whether you're going to lose your policy. It just sort of is a disembodied tell us. I mean, again, it's a notice requirement. You need to tell us at once that was the notice requirement in the policies. It's not just hanging there as surplusage that's meaningless, and when you interpret an insurance policy, you're supposed to interpret the whole policy and all of the provisions of it. You can't just exclude that or say, well, it doesn't really mean anything. And actually, I'd like to specifically address that part of Appellant's argument about the fact that there was an accident fund adjuster who said, oh, well, it really doesn't matter. It doesn't mean anything if you don't give notice. And, well, there's no consequence for the failure to give notice. There is absolutely a consequence for the failure to provide notice. The consequence is there's no coverage. You have not met the policy's condition precedent for that coverage if you fail to give the notice. Now, I suppose it's true that if the insured never notifies accident fund that it's doing work in Kentucky and no one is ever injured working in Kentucky, then I guess it has no consequence whatsoever. But, you know, if you're actually trying to avail yourself of coverage in Kentucky, you had to have complied with the notice provision. Ms. Hoffman, how do you respond to their argument that have work, for lack of a better word, is a bit ambiguous, that it doesn't apply to their short-term projects in Kentucky? What would be the shortest-term project that wouldn't apply under this, that provision? Would a day of work in Kentucky not need notice? You know, I don't know that whether a project is short-term or not essentially makes a difference here or is relevant here because the undisputed facts are that Custom Mechanical was doing work in Kentucky since its inception. It was registered to do business in Kentucky since 2009. And in terms of, you know, how long was the project or when they were doing work, you know, the evidence in the record, undisputed evidence is that they were working in Kentucky on, and remember, May 13, 2016 was the inception of the, you know, the new policy. The backdated date. Yeah, and not backdated. That's when the control changes. Appellants argue that it was, you know, somehow unilaterally backdated by accident fund, and I think the record is clear that that is not the case, and that was the specific date that was requested by Custom Mechanical and by its agent, Chiltese. And, you know, there's written evidence of that fact, and the reason it was that date is that was the date of the new ownership of Custom Mechanical. It was not a date that was somehow, you know, unilaterally selected by accident fund, but back to the point on, you know, how long is the project or when are you doing work, they were doing work in Kentucky, maybe it was sporadically, but since 2009, and specifically in 2016, they were doing work in Kentucky on May 2nd, 3rd, 4th, 5th, 6th, 9th, 12th, 13th, the day of the new policy, 18th, then in June 30th, July 1st, 11th, 12th, 13th, 18th, 19th, 20th. You're just saying this isn't one of the marginal cases. This is not a question where this is on the margin or it's debatable or we have to figure out exactly which project they started on what day. And, in fact, notice would have been required under three different provisions. Notice, well, you know, again, in Part 3, either they, essentially, they had work on the essential date of the policy and, again, I think with all of those dates, you know, from May and June and through July and August, September, and into October, I think it's pretty clear that they had work in Kentucky and did not disclose that either in the application for the policy and, certainly, there was no notice of within 30 days of the inception of the policy. I mean, nobody's talking about what's going on behind the scene here, but I assume Kentucky has somewhat more generous workers' comp benefits and so the rates might be more  Presumably, again, had they obtained the coverage in Kentucky, again, requirement that they provide the notice, they had to do that in order to obtain that coverage, but then, yes, certainly, the insurance would be priced based on the coverage for Kentucky. Now, you don't object to Shultice's standing argument here, do you? So, I did not object to the standing argument and I understand why they have an interest, obviously. They believe they have an interest in the outcome of this appeal in this case. I'm surprised the parties didn't talk more about Rule 14 in that connection because it is a derivative liability scenario here and if they can get rid of the primary liability, then, of course, off goes the derivative liability, too, even though there might not be a formal judgment under it. Well, essentially, and this relates to, in part, relates to the argument that appellants are making now or made in their reply about whose agent, you know, Shultice is. That was not disputed. That was already decided, obviously, at the district court level and it is the basis for Custom Mechanical's third-party claim against Shultice, which is still in the district court, pending in the district court. It's not up in appeal. Summary judgment was denied on that claim specifically. As counsel had, you know, suggested, there was some dispute over the fact about whether Custom Mechanical ever notified Shultice about the fact that they were doing work in Kentucky. So that's certainly a disputed fact, but that's a disputed fact in that case that Custom Mechanical is still pursuing against its agent. Not in the case regarding whether or not Custom Mechanical complied with the notice provision of the accident fund policy and, therefore, would have coverage for Kentucky. So what role is Mr. Cope and Liberty Mutual currently playing in this appeal? So I believe, well, Mr. Cope is the injured worker, and I believe Liberty Mutual Does he risk having nobody pay for his injuries? Again, the reason Liberty Mutual is involved, because if there is no coverage from accident fund, I believe Liberty Mutual is the carrier that is essentially on the loss or on the hook. Okay. That's what I thought, but it's a little obscure. Right. Okay. Anything else? I have nothing further. All right. Well, thank you very much, then. Anything further, Ms. Rowe? Thank you. I think your time expired, but I will give you a minute. Thank you, Your Honor. I just have one quick thing. Under Part 3A-2, I'm getting all these mixed up in my head, the coverage is automatic. If you read that provision, it's automatic. It is not a condition. Notice is not a condition precedent to that coverage, which is how it's been argued by accident fund. But if you read it, that actual coverage is not contingent upon notice. It says it automatically applies. Thank you, Your Honor. Thank you for giving me a little bit. Thank you. Thanks to both counsel. We'll take the case under advisement.